IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND　　＊
ALLIED TRADES INDUSTRY
PENSION FUND, ET AL.　　　　　　＊

　　　V.　　　　　　　　　　　　＊　　CIVIL NO. ELH-13-01370

BAKER-CLOUSE CONSTRUCTION　　　＊
SERVICES, LLC
　　　　　　　　　　　　　　　　＊

## REPORT AND RECOMMENDATION

This matter comes before the Court upon motion by Plaintiffs, International Painters and Allied Trades Industry Pension Fund ("Pension Fund" or "Fund"), and Fund trustee Gary J. Meyers ("Meyers"), in their official capacity as fiduciaries on behalf of the International Painters and Allied Trades Industry Pension Plan ("Pension Plan"), the Finishing Trades Institute f/k/a the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"), and the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), for an entry of default judgment against Defendant, Baker-Clouse Construction Services, LLC ("Company" or "Defendant"), pursuant to Federal Rule of Civil Procedure 55(b)(2) for failure to appear, answer, plead, or otherwise defend in this matter. (ECF No. 5).

Plaintiffs move under sections 515 and 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§

1

1145, 1132(g)(2)(A)-(D), and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), for unpaid contributions, liquidated damages, interest, and attorneys' fees and costs incurred by the Pension Fund pursuant to the collective bargaining agreement (CBA) between Defendant and Glaziers, Architectural Metal & Glass Workers Local Union 1786 ("Union"). (ECF No. 7-2, 7-5).

This case has been referred to the undersigned magistrate judge in accordance with 28 U.S.C. § 636 and Local Rule 301 and 302, to review a default judgment and/or make recommendations concerning damages. (ECF No. 8).

**I. Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.

In deciding whether to grant a motion for default judgment, the Court must first consider the following three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3rd Cir.1987); see also Smith v. Bounds, 813 F.2d 1299 (4th Cir.1987) (relying on these factors in determining whether a

default judgment merited reconsideration).

The Court must also determine whether plaintiff has alleged legitimate causes of action. In reviewing plaintiffs' Motion for Entry of a Default Judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780–81 (4th Cir.2001). It however remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id.; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3rd ed. Supp.2010) ("[L]iability is not deemed established simply because of the default ... and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780–81. Unlike factual allegations as to liability, the Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. Credit Lyonnais Secs.(USA), Inc.v. Alcantara, 183 F.3d 151, 154 (2nd Cir.1999). In so doing, the Court may conduct an evidentiary hearing. FED. R. CIV. P. 55(b)(2). The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary

basis in the record for the award. See, e.g., Stephenson v. ElBatrawi, 524 F.3d 907, 917 n. 11 (8th Cir.2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F.Supp.2d 15, 17 (D.D.C.2001) (finding that a court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

**II. Preliminary Factors**

The Clerk of Court having filed entry of default on August 7, 2013 (ECF No. 6), the undersigned concludes that the procedural requirements for entry of default judgment have been met. Moreover, because the defendant has failed to file any responsive pleadings or otherwise show cause as to why default should not be granted, the Court is "not in a position to judge whether any delay was the result of culpable misconduct." Sambrick, 834 F.2d at 73. Further, defendant's failure to appear deprived plaintiffs of any other means of vindicating their claim and plaintiffs would be prejudiced if default is not granted.

**III. Discussion**

A. ERISA and LMRA Claims

Plaintiffs bring the instant action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, and the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 185. (ECF No. 1). They move to collect unpaid contributions, liquidated damages, interest, attorneys' fees, and costs that they allege are owed to the fund as a result of the defendant's failure to make timely contributions per the Labor Agreement with the Union. (ECF No. 7-2).

**1. Standing**

LMRA § 301 provides for federal jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. 29 U.S.C. § 185(a). The Fund and Gary J. Meyers have standing to bring this suit as authorized fiduciaries and agents for the intended beneficiaries of the CBA; the Pension Plan, FTI, and LMCI. Int'l Painters & Allied Trades Indus. Pension Fund v. Empire Glass, Paint & Mirror, Inc., 2012 WL 3233532 (D. Md. Aug. 3, 2012) (internal citations omitted).

ERISA Section 502(a)(3) provides that a civil action may be

brought by a "participant, beneficiary or fiduciary" to "obtain appropriate equitable relief ... to redress ... violations or ... to enforce any provisions" of the statute or terms of the plan. 29 U.S.C. § 1132(a)(3). An individual is a fiduciary under ERISA to the extent the person "exercises any discretionary authority or control respecting management of [a] plan or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). This action is brought by the authorized fiduciaries of two employee benefit plans (Pension Plan and FTI) and one employee management committee (LMCI), all of which claim to be entitled to relief as intended third-party beneficiaries of the CBA between the Defendant and the Union. (ECF No. 1, ¶ 4-10). In addition, ERISA Section 502(d)(1) provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1).

## 2. ERISA § 515

ERISA § 515 provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In a collection action based on section

515, a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents. Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997).

The relevant controlling document here is the CBA between Baker-Clouse Construction and Glazier, Architectural Metal and Glass Workers Local Union #1786 (ECF No. 7-5). The Agreement establishes the terms and conditions of employment for employees of signatory employers. The current agreement covers the period from May, 2012 through July 14, 2012. Baker-Clouse is a signatory to the agreement. (ECF No. 1, ¶ 13; ECF No. 7-5).

Under the CBA, defendant must contribute a specified amount to each named fund for every hour of compensation owed to its employees. (ECF No. 7-5 Art. 21, 22, 23(1)(b)). These amounts differ for each of the funds joined as plaintiffs. (ECF No. 7-5 Art. 23(1)(b)). Additionally, the governing Rules and Regulations of the Pension Plan itself provide certain additional payments, such as interest, liquidated damages, and incurred attorneys' fees and costs in the event that an employer fails to make timely contributions to the plan. (ECF No. 7-7 Art. 12(b)). This provision mirrors the enforcement regulations set forth in Sec. 502(g)(2) of ERISA., 29 U.S.C. §1132(g)(2).

To support their factual allegations, plaintiffs rely on

the declaration of Vicki McGlone, Special Assistant to the administrator of the funds. (ECF No. 7-4). Ms. McGlone's duties include the supervision of the fund's collections department. (Id.). Based on Ms. McGlone's account of the records, plaintiffs assert that Baker-Clouse failed to make contributions for the period of May 2012 through July 2012 and owes plaintiffs said contributions, as well as liquidated damages and interest amounting to a total of $31,166.25. (Id.)These unchallenged assertions of fact constitute legitimate causes of action under ERISA § 515.

**3. Damages**

Plaintiffs base their claim for damages on ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), which provides:

> (2) In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan-
>     (A)the unpaid contributions,
>     (B)interest on the unpaid contributions,
>     (C)an amount equal to the greater of-
>         (i) interest on the unpaid contributions, or
>         (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>     (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>     (E) such other legal or equitable relief as the court deems appropriate.

This provision is mirrored in the language of the agreement between defendant and Local Union 1786, which provides the second, contractual basis for plaintiffs' claim. (ECF No. 7-5).

The affidavit of Ms. McGlone (ECF No. 7-4) presents the following table itemizing the amounts that the defendant owes the plaintiffs:

| FUND | CONTRIBUTIONS | INTEREST | LIQUIDATED DAMAGES | TOTAL |
|---|---|---|---|---|
| Pension Fund | $24,933.62 | $718.54 | $4,986.73 | **$30,638.89** |
| FTI | $214.58 | $6.18 | $42.92 | **$263.68** |
| LCMI | $214.58 | $6.18 | $42.92 | **$263.68** |
| **TOTAL** | **$25,362.77** | **$730.81** | **$5,072.57** | **$31,166.25** |

**a. Unpaid Contributions**

Relying on the declaration of Ms. McGlone, which in turn is based on the fund's audits of employee payroll records, employer tax documents, disbursement ledgers, and check registers, plaintiffs state that they are entitled to pension contributions that the Defendant failed to submit for the period of May 2012 through July 2012, totaling $25,362.77. (ECF No. 7-4, ¶8a). At the Court's request, plaintiffs provided the defendant-prepared remittance reports used for the calculation of this amount as well as record of the underlying calculations. (ECF No. 10) The aforementioned documents support the claim that defendant owes contributions in the amount claimed by the plaintiffs.

9

Accordingly, the undersigned finds that plaintiffs' request is supported by competent evidence and recommends an award of $25,362.77 in contributions as requested.

**b. Pre-Judgment Interest**

ERISA provides for an award of interest on unpaid contributions determined by using the rate provided under the relevant plan. 29 U.S.C. §1132(g)(2). In the plan presented: "Interest on the unpaid contributions, [is] determined at the rate for underpayment of federal income taxes under IRC 6621". (ECF No. 7-7, 8). 26 U.S.C. §6621 provides that the applicable rate is the fluctuating Federal short-term rate plus 3 percentage points. This is the same as the default rate that would be applied to unpaid contributions under ERISA if an interest rate is not provided under the relevant plan. 29 U.S.C. §1132(g)(2)(E). Accordingly, the undersigned recommends an award of pre-judgment interest on unpaid contributions based on the Federal short-term rate plus 3 percentage points, which plaintiffs compute at $730.81. See (ECF No. 10, A-10).

**c. Post-Judgment Interest**

Federal law mandates the awarding of post-judgment interest "calculated from the date of the entry of the judgment" at a rate from "the weekly average 1–year constant maturity Treasury

yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961.  Even though ERISA does not specifically require "post-judgment interest, it does provide that the statute is not to be construed to 'alter, amend, modify, invalidate, impair, or supersede any law of the United States.' therefore, the federal post-judgment interest statute, 28 U.S.C. § 1961, is applicable in ERISA cases." Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1031 (4th Cir.1993) (citing 29 U.S.C. § 1144(d) (1988); I.A.M. Nat'l Pension Fund v. Slyman Indus., Inc., 901 F.2d 127, 130 (D.C.Cir.1990)).

Post-judgment interest is calculated based on the compensation due to the plaintiffs based on the merits judgment, and "prejudgment interest traditionally has been considered part of [this] compensation due plaintiff." Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 109 S.Ct. 987, 991 (1989) (citing West Virginia v. United States, 479 U.S. 305, 310, and n. 2, 107 S.Ct. 702, 706, and n. 2, 93 L.Ed.2d 639 (1987); General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-656, and n. 10, 103 S.Ct. 2058, 2062, and n. 10, 76 L.Ed.2d 211 (1983)).  Therefore, the undersigned recommends post-judgment interest based on the weekly average 1-year constant maturity Treasury yield rate on the entire amount the court awards, including pre-judgment interest.

**d. Liquidated Damages**

ERISA and the pension plan both provide for the award of liquidated damages equal to the greater of: (1) the accrued interest on the unpaid contributions; or (2) twenty (20) percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2); (ECF 7-7 Art. 10). Plaintiffs have calculated the interest at $730.81 and twenty percent of the unpaid contributions at $5,072.57, and have requested $5,072.57 in liquidated damages. (ECF No. 7-4 ¶8c and ECF No. 10, ¶6). As the statute provides for the award of the greater of the two amounts, the undersigned recommends an award of $5,072.57 in liquidated damages.

**e. Attorneys' Fees and Costs**

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some degree of success on the merits." Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 634 (4th Cir.2010) (citations omitted).

The calculation of a reasonable fee award, known as the lodestar award, is reached by multiplying the reasonable hours expended by a reasonable hourly rate. See Grissom v. The Mills Corp., 549 F.3d 313, 320-21 (4th Cir.2008); see also Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir.1990) (noting that "[i]n

addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award"); Local Rules, Appendix B.

In calculating attorneys' fees and costs, plaintiffs rely on the declaration of Jessica A. Reynolds, Esq. (ECF No. 7-8). Ms. Reynolds is an associate attorney for the firm providing plaintiffs' counsel, and has submitted detailed time sheets and billing reports in support of awarding plaintiffs attorneys' fees and costs in the amount of $5,400.33 based on a special fee schedule with the plaintiffs for a $235.00 per hour rate for attorneys and $70.00 per hour rate for paralegals and clerks. The billing reports represent 19.3 hours of work by attorneys and 4.4 hours of work by legal assistants plus a total of $557.33 in associated costs. (ECF No. 7-8; 7-9). The amount of time charged seems high. Moreover, it is puzzling why there were 9 "timekeepers" on the case, undoubtedly resulting in inefficiency in the handling of the matter. Accordingly, the Court recommends a reduction of 20% in the documented time at the charged rates which was $4843, reducing the attorneys' fees awarded to $3874.40.

Per the requirements of Appendix B to the Local Rules, evidence of the prevailing market rates for legal services has been provided. (ECF No. 7-8; 7-10). The attorneys that worked

on this case average nine years of work experience with a range of seven to eleven years of experience.  The requested hourly compensation for the attorneys ($235) and paralegals ($70) is on the low-end or below the US District Court for the District of Maryland Local Rules' guidelines regarding hourly rates for the determination of attorneys' fees considering the experience of the attorneys.  The hourly rates are reasonable.  Accordingly, as modified, the undersigned finds plaintiffs' request for attorneys' fees and costs is reasonable and supported, and therefore recommends an award of $3,874.40 in attorneys' fees. The costs include photocopying, a service fee, a filing fee, and postage.  The costs are reasonable and the Court recommends an award of $557.33 in costs.

**f. Equitable Relief**

ERISA authorizes the Court to provide for other legal or equitable relief as it deems appropriate under 29 U.S.C. 1132(g)(2)(E).  Plaintiffs have requested such relief in the form of the payment of $262.35 in audit costs.  The CBA explicitly provides that an employer who fails to make contributions to the Pension Fund "shall be liable for all costs of collection of the payments due."  (ECF No. 7-5 Art. 23(4)). An audit was performed to determine the exact amounts that defendant owed in unpaid contributions (ECF No. 7-4).  The costs

14

of said audit can reasonably be considered "costs of collection" for which defendant should be held liable. <u>Int'l Painters & Allied Trades Indus. Pension Fund v. Empire Glass, Paint & Mirror</u>*, Inc.*, CIV.A. RDB-11-03281, 2012 WL 3233532 (D. Md. Aug. 3, 2012). Accordingly, the undersigned finds that plaintiffs' request for equitable relief in the form of audit costs is reasonable, and recommends an award of $262.35.

**g. Conclusion**

Pursuant to the Order of Reference dated August 16, 2013 (ECF No. 8), the undersigned judge finds that an entry of default judgment is appropriate and therefore recommends that default judgment be entered in the following amounts reflecting:

1. Unpaid contributions of $25,362.77;

2. Pre-Judgment Interest of $730.81;

3. Liquidated damages of $5,072.57; and

4. Attorneys' fees of $3,874.40 and costs of $557.33.

In addition, the undersigned finds that Plaintiffs are entitled to post-judgment interest on the entire amount above, $35,597.88, to be calculated according to 28 U.S.C. § 1961.

Date:   11/5/13                              /s/
                                      Susan K. Gauvey
                                      United States Magistrate Judge